UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SANTOS ARANA ABURTO *et al.*,

Petitioners,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. 26-2404-RSM

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

## I.      INTRODUCTION

This matter comes before the Court on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed on behalf of Petitioners Santos Arana Aburto, Erika Balderrama Basurto, Carmen Basurto Gomez, Edimar Crespo Villasmil, Franklin Marquez Zerpa, Diego Montes Nieto, and Jeison Ortiz Macias.  Dkt. #1.  The Court has reviewed the petition, the Return filed by the Government, Dkt. #4, Petitioners' Traverse, Dkt. #7, and the remainder of the record.  For the following reasons, the Court will grant the habeas petition.

## II.      BACKGROUND

Unless otherwise noted, the following facts are taken from the verified petition, Dkt. #1. All Petitioners in this case are currently being detained at Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, did not receive any written notice or otherwise for their re-detentions, and did not have hearings before neutral decisionmakers to determine if re-detention was justified.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 1

**A. Petitioner Santos Arana Aburto**

Mr. Arana Aburto is a citizen of Nicaragua.  After fleeing political persecution and entering the United States around January 19, 2024, he was detained by immigrations officials and released on his own recognizance with a Notice to Appear on January 30, 2024.  At his release, ICE provided Mr. Arana Aburto with a phone with a pre-installed mobile application and instructions to complete Alternatives to Detention ("ATD") check-ins every Tuesday at 9:00 a.m.  He moved to Washington State and continued to follow the ATD requirements, including home visits and office check-ins, to the best of his ability, until his re-detention in May of 2026.  He suffered various technical issues with his phone and the system, each time working with his Intensive Supervision Appearance Program ("ISAP") officer to resolve the issues.

Mr. Arana Aburto's first court hearing was scheduled for October 2026 with the Seattle Immigration Court.  He never made it to that hearing, instead he was detained at a regular ISAP office check-in.  He was eventually taken to the NWIPC.  He was provided with a Form I-213 containing a list of 61 alleged ATD violations.

**B. Petitioners Erika Balderrama Basurto and Carmen Basurto Gomez**

Ms. Balderrama Basurto and her mother Ms. Basurto Gomez are citizens of Ecuador.  They entered the United States around March 6, 2024.  They were briefly held in immigration custody before they were each issued a Notice to Appear and released to pursue asylum in immigration court.  They were provided with phones and instructions to send weekly photos of themselves to ISAP. They were also instructed to report to an ICE field office once they reached their destination within the United States.

In approximately February 2026, Ms. Balderrama Basurto was assigned a new ISAP officer who informed her at an in-person appointment that she and her mother had committed a

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 2

series of reporting violations.  Over the next two months, the situation escalated with ISAP.  They protested to the ISAP officer that they had not received check-in phone calls; they tested the system by having the officer call her and confirmed that the call did not ring on her phone.  They were fitted with ankle monitors and told that their only reporting requirement would be in-person office visits.  Their next in-person appointment was rescheduled via the application.  On April 30, 2026, they appeared for that appointment and were detained and sent to the NWIPC.

### C.  Petitioner Edimar Crespo Villasmil

Petitioner Edimar Crespo Villasmil is a citizen of Venezuela who fled to the United States after a kidnapping attempt.  She turned herself in to U.S. immigration officials around December 14, 2024.  She was briefly held in immigration detention before being issued a Notice to Appear for proceedings in Seattle Immigration Court and released with an ankle monitor. On December 16, 2024, Ms. Crespo Villasmil went to the Seattle Immigration Court as directed and received a document enrolling her in ISAP.  She hired an attorney and applied for asylum.  Her first court date was eventually rescheduled for September 2026 to allow her attorney to attend with her.

The petition details a series of known, excused, ATD violations.  For example, she traveled to California to obtain a passport for her son with the permission of her ISAP officer.  When she returned to Seattle, she opened the ISAP mobile application to see five messages asking about her departure from Washington and claiming that her application to travel to California was not accepted.  She was told to report to the Tukwila ICE Field Office, the next day; she did so and her officer assured her that the situation was fine.

She has no criminal history.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 3

On April 23, 2026, was arrested by ICE at a regular check-in. She was transferred to the NWIPC. She was provided with a list of 8 alleged ATD violations only after she was already detained.

On June 9, 2026, Ms. Crespo Villasmil's asylum application was denied by an immigration judge. She is appealing this decision.

### D. Petitioner Franklin Marquez Zerpa

Franklin Marquez Zerpa is a citizen of Venezuela. He entered the United States on April 19, 2024, was briefly detained by immigration officials at the border, and then released with an ankle monitor and a Notice to Appear in April 2027 for his immigration court case. At his release, Mr. Marquez Zerpa provided immigration officers with his intended address in Seattle, Washington, and received instructions to report to ICE upon his arrival.

Mr. Marquez Zerpa reached Seattle by April 23, 2024, and checked in at the ICE office as required. While at the office, he asked ICE for help with his ankle monitor, which had been placed too tightly and was causing inflammation in his right foot. ICE directed him to report to the local ISAP office, where ISAP officers cut the device from his right ankle and fitted him with a new device on his left ankle instead. Shortly after he had left the ISAP office, Mr. Marquez Zerpa received a call from an ISAP officer who wanted to know whether Mr. Marquez Zerpa had removed his ankle monitor. Although Mr. Marquez Zerpa reminded the officer that he had just been at the ISAP office and been fitted with a replacement on his other ankle, he was nevertheless asked to return to the office in a week.

When he reported to ISAP the following week, officers removed the ankle monitor and installed a mobile application on Mr. Marquez Zerpa's cell phone. Mr. Marquez Zerpa received new instructions to submit weekly photo check-ins via the mobile application every Tuesday

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 4

morning, report for in-office appointments every six months, and be available for regular visits at his home.

Mr. Marquez Zerpa complied with these requirements to the best of his ability and despite a number of technical difficulties.  He also reported to the ISAP office about every six months as required. Mr. Marquez Zerpa continued completing his phone check-ins as well as home and in-office visits without any changes through the end of 2025. At his December 2025 in-office appointment, ISAP informed him that they were increasing supervision for everyone in the program and that both his in-office and home visits would now take place once a month.

To his knowledge, Mr. Marquez Zerpa missed only three check-ins throughout his two years on ATD but communicated with ISAP each time and was told each incident was excused. Various other small technical issues are detailed in the Petition.

On April 28, 2026, Mr. Marquez Zerpa returned to the ISAP office for his next in person appointment.  He was informed that he was being re-detained due to 17 ATD violations.  Mr. Marquez Zerpa was thereafter placed in chains and eventually taken to the NWIPC in Tacoma, Washington, where he remains detained.

**E.  Petitioner Diego Andres Montes Nieto**

Diego Andres Montes Nieto is a citizen of Venezuela entered the United States to seek asylum on or around April 4, 2024, and was briefly held in immigration custody before he was served with a Notice to Appear, released from immigration custody with an ankle monitor, and instructed to report to the local ICE field office once he reached his destination in the United States.  Upon his arrival in Tacoma, Washington, Mr. Montes Nieto reported to ICE as instructed, where he was placed on an ATD program.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 5

Mr. Montes Nieto's check-in schedule consisted of weekly photo check-ins via the mobile application, two video calls each month which had to be answered from home, and two monthly in-person appointments at the ISAP office.  For the next two years, he fulfilled these requirements to the best of his ability.  There were technical issues.  He was not informed that he was out of compliance and was simply told that the application was not working.

He hired an attorney and, in March 2025, timely filed his application for asylum with the Seattle Immigration Court.

Mr. Montes Nieto has no criminal convictions.  He was arrested on October 29, 2024, for street racing but the charge was dismissed. At his next monthly in-person ISAP appointment following the incident, Mr. Montes Nieto reported to the case officer that he had been arrested. He was asked a few questions and successfully completed the check-in. No ISAP or ICE officer brought up the incident again as he continued to attend in-person check-ins for over a year.

On May 4, 2026, Mr. Montes Nieto reported for a scheduled in-office appointment and was abruptly arrested.  He was informed that he was being detained because of his 2024 arrest and not given any written explanation or opportunity to defend himself before he was re-detained. He was eventually transferred to the NWIPC and provided a list of 13 alleged ATD violations.

**F.  Petitioner Jeison Ortiz Macias**

Jeison Ortiz Macias is a nineteen-year-old citizen of Colombia who came to the United States after being tortured and threatened by the police.  He was held in immigration custody for about three weeks until he passed his credible fear interview.  He was released in early November 2024 with an ankle monitor and instructed to report to the Tukwila ICE Field Office where he was placed on an ATD program with ISAP.  Officers removed his ankle monitor and installed the mobile check-in application on his phone.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 6

He timely filed his asylum application on April 8, 2025.

Mr. Ortiz Macias' family struggled financially, and during the first six months he was in the United States, his phone was sometimes turned off when his mother missed a phone payment. He also experienced recurring technical issues with the ATD application.

Mr. Ortiz Macias affirmatively reached out to ISAP officials about these issues at least four times, by sending a message and also raising the issue during his in-person visits. The ISAP officer would also acknowledge the technical issues, saying it was "a common problem" or that it "happens sometimes." Mr. Ortiz Macias was never informed that the technical issues he experienced were recorded as infractions.  He was notified of only one infraction, when he checked in from outside his zone while traveling to Chicago to obtain his passport.

Mr. Ortiz Macias has no criminal convictions.  He has received tickets for driving-related offenses, and on one occasion was arrested for reckless driving when he was accused of changing lanes too quickly, but no charges were filed in that case.

From 2024 through 2026, Mr. Ortiz Macias attended all but two of his in-office appointments.  Both times, Mr. Ortiz Macias immediately called the ISAP office to explain that he had no means to arrive at the appointment on time, and he was notified that these incidents were recorded as infractions but that it was okay.

On April 23, 2026, Mr. Ortiz Macias presented himself at the ISAP office and after what appeared to be a routine check-in.  He was shown a list of infractions, given no opportunity to explain, and sent to the NWIPC.  There he was provided with a Form I-213 containing a list of 28 alleged ATD violations.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 7

### III.   DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioners contend that their arrests and detentions violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement  of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 8

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that Mathews' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). The parties both discuss how the application of the *Mathews* text applies here, and the Court will consider each *Mathews* factor in turn to determine whether Petitioners' arrests and detentions comport with constitutional due process requirements. In so doing, the Court is mirroring the application of this test used by other judges in this District. *See, e.g., E.A. T.-B. v. Wamsley, et al.*, No. 25-1192-KKE, -- F. Supp. 3d --, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025). The Government acknowledges the holding in *E.A. T.-B.* and similar cases from this district, acknowledges that alleged ATD or reporting violations were present in those cases, and that the existence of such violations does not eliminate "the need for pre-deprivation process," but argues that the "present case, however, presents additional facts that distinguish it from those decisions." Dkt. #4 at 15.

The Court agrees with Petitioners that "Respondents' due process analysis, consisting of one paragraph for each *Mathews* factor… confirms that Petitioners present substantially similar claims." Dkt. #7 at 2 (citing Dkt. #4 at 16–17).

Petitioners' interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioners were arrested, detained for weeks or months, and remain in custody undoubtedly deprives them of an established interest in their liberty.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioners that the risk of erroneous deprivation of their liberty interest in the absence of a pre-detention hearing is high under the facts of this case.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 9

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioners without hearings.  The Government clearly has an interest in detaining removable non-citizens under certain circumstances to the extent needed to ensure that they do not abscond or commit crimes.  But where Petitioners have been living for years in United States with permission of our immigration courts, following all the rules to the best of their abilities while waiting for hearings, and there are no changes in their particular factual circumstances prior to their arrests, the Government fails this factor.  The facts here show that each Petitioner was rightfully shocked to be detained after following the ATD procedures to the best of their abilities, often with violations occurring months or even years prior to detention.  There is no evidence on the record that any Petitioner is a flight risk or danger to the community.  The Court finds that the Government's interest here is low.  *See also E.A. T.-B.*, *supra*.

Based on this review of the *Mathews* factors, the Court finds that Petitioners have a protected liberty interest in continued release from custody and that due process requires that Petitioners receive hearings before an immigration judge before they can be re-detained.  Given the length of detention for these Petitioners and the potential additional detention as they await the outcomes of their immigration proceedings, the Court will order immediate release.  Petitioners adequately set forth case law on this issue and the need for pre-detention process.  *See* Dkt. #7 at 10–11.

## IV.    CONCLUSION

Having reviewed the instant Motion and the remainder of the record, the Court hereby finds and ORDERS that Petitioners' habeas petition, Dkt. #1, is GRANTED.  The Court ORDERS that Petitioners shall be released from custody immediately on conditions no more restrictive than those in place prior to their detention, and that they may not be re-detained until

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 10

after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate, at which the Government bears the burden of justifying continued detention by clear and convincing evidence.  Respondents must file a status report no later than August 14, 2026, confirming compliance with this Order.

DATED this 10th day of August, 2026.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 11